**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **DONALD LEE JAMESON,** | § | |
| **TDCJ No. 01687020,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:15-cv-00121-D-BP** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a Petition for Writ of Habeas Corpus ("the Petition") filed by Petitioner Donald Lee Jameson pursuant to 28 U.S.C. § 2254. ECF No. 3. United States District Judge Sidney A. Fitzwater transferred this case to the undersigned for pretrial management on May 16, 2018. ECF No. 28. After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that Judge Fitzwater **DENY** the Petition for Writ of Habeas Corpus (ECF No. 3).

**PROCEDURAL BACKGROUND**

Petitioner Donald Lee Jameson ("Jameson") is a prisoner confined in the Coffield Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TCDJ-CID"), in Tennessee Colony, Texas. ECF No. 3 at 1. Because Jameson is incarcerated within the Texas Department of Criminal Justice, a proper respondent in this case is Lorie Davis, the Director of the Texas Department of Criminal Justice, Correctional Institutions Division (the "Director"). *See Joe v. Fitzsimmons*, No. 3:16-CV-0275-L-BH, 2016 WL 1594348, at *1 (N.D. Tex. Mar. 17, 2016),

*report and recommendation adopted*, No. 3:16-CV-275-L, 2016 WL 1588150 (N.D. Tex. Apr. 20, 2016) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004)).

Jameson was convicted of murder on January 14, 2011, and sentenced to life imprisonment. ECF No. 3 at 2. He appealed his conviction to the Seventh Court of Appeals, Amarillo, Texas ("COA"), which affirmed. *Id.* at 3; *Jameson v. State*, No. 07-11-0196-CR, 2013 WL 150281, at *1 (Tex. App.—Amarillo Jan. 14, 2013, pet. ref'd). The Texas Court of Criminal Appeals ("TCCA") refused his petition for discretionary review ("PDR") on May 22, 2013. ECF No. 3 at 3. Jameson then brought a state writ of habeas corpus before the TCCA on December 12, 2015. *Id.* at 3–4. The TCCA denied the writ without written order on February 18, 2015. *Id.* at 4.

Jameson filed the Petition in this Court on April 13, 2015. ECF No. 3. He filed a Memorandum of Law as an attachment to his Petition on June 1, 2015. ECF No. 15. Pursuant to this Court's Order (ECF No. 8), the Director filed a preliminary response on July 24, 2015. ECF No. 21. Jameson filed a reply on September 18, 2015. ECF No. 26. The parties agree that the Petition is neither barred by the statute of limitations nor is it successive. ECF No. 3 at 13; No. 21 at 7.

## FACTUAL BACKGROUND

On August 1, 2009, at around 2:00 a.m., in Dumas, Texas, Robert Vasquez was driving a friend home from a birthday party when he saw a gold El Camino with fogged windows and blood on the driver's-side door. ECF No. 16-16 at 24–26. When Robert Vasquez walked to the car, he saw a body inside, which was later identified as the body of Ronald Whitfield ("Whitfield"). *Id.* at 27–28. Later that day at the Dumas Police Department, Jameson confessed to killing Whitfield. ECF No. 16-16 at 81–95; No. 17-3 at 5–8.

Rhonda Vaughn ("Vaughn") was the president and owner of the Keyhole Club in Dumas,

and was working there on the evening of July 31, 2009, into the morning of August 1. ECF No. 16-16 at 38. Vaughn saw Whitfield at the Keyhole Club that night. *Id.* at 38. Jameson entered the Keyhole Club after last call, but the staff ejected him. *Id.* at 40–41. At trial, Vaughn stated that she believed Jameson was intoxicated but not violent. *Id.* at 45.

That same night, Zachary Hawkins went to the Keyhole Club to pick up his father. *Id.* at 49–50. Zachary Hawkins observed Jameson riding in Whitfield's car as the car left the Keyhole Club. *Id.* at 56–58.

Lieutenant Tom Flood ("Flood"), commander of the criminal investigation decision for the Dumas Police Department, testified at trial that the police's first person of interest was Baltazar Romero ("Romero"). *Id.* at 76–78. After Flood rejected Romero as a suspect, Flood began to look into Jameson as a new person of interest. *Id.* at 78. Flood brought Jameson to the police station at around 4:00 p.m. on August 1, 2009. *Id.* at 78–80. Flood took Jameson into the interview room, informed him of his rights, and took a statement from him in which Jameson voluntarily confessed to killing Whitfield. *Id.* at 81–95; ECF No. 17-3 at 5–8.

In Jameson's statement, he stated that Whitfield offered to give Jameson a ride home from the Keyhole Club in Whitfield's El Camino. ECF No. 17-3 at 5. According to Jameson, Whitfield drove Jameson in the wrong direction, and when Jameson protested, Whitfield told Jameson he would have to perform oral sex on Whitfield. *Id.* Jameson refused and attempted to leave the vehicle, but Whitfield grabbed Jameson and the two men fought. *Id.* at 5–6. Jameson alleged that he cut Whitfield twice with a knife Jameson carried, after which Whitfield stopped fighting, and Jameson ran back to his house. *Id.* at 6. Jameson dropped his knife and wallet when he fled, and he washed his clothes when he got home. *Id.*

At trial, Dr. Elizabeth Miller, a forensic psychologist, testified that Whitfield died of shock-

force injuries from a knife. ECF No. 16-17 at 123; No. 16-18 at 21. She also testified that Whitfield displayed defensive wounds on his fingers. ECF No. 16-18 at 19–20.

Teddy Joe Stewart testified at trial that he had known Whitfield for at least thirty years and had never seen him display any homosexual tendencies. ECF No. 16-17 at 109, 112. Kenneth Land similarly testified that he had known Whitfield for at least forty years and had never seen him display any homosexual tendencies, though he believed Whitfield would have been embarrassed to tell him if Whitfield were homosexual. *Id.* at 117, 119, 121–22. Seth Cowan testified that he observed Jameson's conduct in prison, which led Cowan to believe Jameson might possibly be homosexual. *Id.* at 76. Eber Hernandez ("Hernandez"), a bisexual man who had Whitfield's number stored in his telephone, testified that he did not know Whitfield. ECF No. 16-18 at 40–45.

The defense introduced the expert testimony of Steve Dunlap ("Dunlap"), a licensed professional counselor, who testified concerning post-traumatic stress disorder and diagnosed Jameson with that disorder. ECF No. 16-18 at 84–101; No. 16-19 at 3–4. The prosecution introduced the rebuttal expert testimony of Richard Wayne Nichols II ("Nichols"), a licensed professional counselor, who testified that it was unethical for a clinician like Dunlap to render a diagnosis on a client that the clinician had not evaluated personally. ECF No. 16-19 at 94–104.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides in pertinent part that:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal court may grant a writ of habeas corpus if the state court either arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or decided a case differently from the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000); *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. The standard for determining whether a state court's application was unreasonable is objective. *Id.* at 409–10. The "unreasonable application" clause concerns only questions of fact. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

When ruling on a petition for a writ of habeas corpus, the Court defers to the factual findings of state trial and habeas courts. *Moody v. Quarterman*, 476 F.3d 260, 267–68 (5th Cir. 2007). The state court's determination of a factual issue is presumed to be correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341–42 (2003). This presumption applies not only to explicit findings of fact but also to factual findings implied in explicit conclusions of law. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004) (citing *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson*, 132 F.3d 162, 183–84 (5th Cir. 1997)).

Federal habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). In the

context of habeas corpus, "adjudicated on the merits" is a term of art that refers to a state court's disposition of a case on substantive rather than procedural grounds. *See Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). Federal courts presume that a later, unexplained opinion rests on the same ground as the "last reasoned opinion" on the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

## ANALYSIS

Jameson challenges his conviction on eleven grounds. Eight grounds concern ineffectiveness of trial counsel. He alleges that his trial counsel was deficient for failing to (1) object to the improper exemption of a prosecution witness from the sequestration rule; (2) request a jury instruction on the lesser-included offense of manslaughter; (3) present expert testimony on the effects of intoxication on intent; (4) request a continuance to allow a crucial witness to appear at trial; (5) investigate and present evidence; (6) secure the right to discovery by waiving it; and (7) request a jury instruction on sudden passion during the guilt/innocence phase; as well as (8) cumulative error resulting from the above. Jameson alleges that his appellate counsel was deficient for failing to raise a claim of insufficiency of the evidence to prove intent. He additionally alleges that the prosecution did not prove all of the elements of murder or present sufficient evidence and that there is newly discovered evidence, proving that the victim provoked him.

**I.     Habeas relief is not warranted on Jameson's ineffective assistance of counsel claims.**

The Sixth Amendment of the United States Constitution guarantees a criminal defendant "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Strickland* established a two-prong test for proving ineffective assistance of counsel: (1) petitioner's counsel's performance was deficient and (2) the deficient performance prejudiced

the petitioner. *Id.* Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding, and a specific showing is required on each prong. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983); *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992)).

To satisfy the first prong of *Strickland*, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687–88. A court's review of counsel's performance must be "highly deferential" and must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorneys the benefit of the doubt, . . . but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To prove prejudice under the second prong, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient

to undermine confidence in the outcome." *Id.* Moreover, a reasonable probability "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Harrington*, 562 U.S. at 110).

### A. Jameson's trial counsel did not provide ineffective assistance by not objecting to exemption of a prosecution expert witness because such objection would have been futile.

Under Texas Rule of Evidence 614, a court must order witnesses sequestered so that they cannot hear other witnesses' testimony, if any party requests sequestration. Certain classes of prospective witnesses are exempt from exclusion from the courtroom, including a party who is a natural person (614(a)), a person whose presence is shown by a party to be essential to presenting the party's claim or defense (614(c)), and the victim in a criminal case (614(d)). Tex. R. Evid. 614; *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 116–17 (Tex. 1999). The party seeking to exempt a witness under Rule 614 has the burden of showing that the claimed exception applies. *White v. State*, 958 S.W.2d 460, 463 (Tex. App.—Waco 1997, no pet.); *Drilex*, 1 S.W.3d at 117. Under Texas law, if the party does not make the requisite showing for exemption, then the trial court abuses its discretion in permitting a witness to remain. *Moore v. State*, 882 S.W.2d 844, 848 (Tex. Crim. App. 1994). However, "[t]he trial court is vested with discretion and may permit expert witnesses to be exempt from the rule in order that they may hear other witnesses testify and then base their opinion on such testimony." *Martinez v. State*, 867 S.W.2d 30, 40 (Tex. Crim. App. 1993). Expert witnesses are typically but not always exempt from the rule under the exemption for a person whose presence is shown by a party to be essential to presenting the party's claim or defense. *Drilex*, 1 S.W.3d at 118–19.

Jameson argues that his trial counsel was deficient in not objecting to the prosecution's request that one of its expert witnesses, Nichols, be excused from sequestration in order to listen

to testimony from Dunlap, one of Jameson's expert witnesses. ECF No. 16-18 at 60–61. The judge granted the exemption, stating "I think that's appropriate under the rules." *Id.* at 61. Both witnesses were experts in the field of psychology and testified to Jameson's psychological condition, including the effects of his abuse as a child and the post-traumatic stress disorder that potentially resulted from the abuse. ECF No. 16-18 at 61 *et seq.*; No. 16-19 at 94 *et seq.* As Jameson states, Nichols contradicted Dunlap when called as a rebuttal witness, even to the point of opining that Dunlap unethically made a facial diagnosis of Jameson. ECF No. 15 at 7 (referring to ECF No. 16-19 at 102–106). Jameson argues that he was thereby prejudiced by his counsel's failure to object to the exemption. *Id.*

The Director asks the Court to rely on the former Texas Rule of Criminal Evidence 703, which states that an expert can base his testimony on facts made known to him at the trial. ECF No. 21 at 17. However, the Texas Rules of Criminal Evidence have not been in effect since they were merged with the Texas Rules of Civil Evidence in 1998 into the unified Texas Rules of Evidence. *Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009). The version of Rule 703 in effect at the time of Jameson's trial did not mention trial in any way. Tex. R. Evid. 703 (1998) (effective 1998–April 1, 2015).

Nevertheless, there was no prejudice here. The prosecution stated that it wanted its "consulting expert" exempted so that he could hear the testimony of the opposing expert. ECF No. 16-18 at 60–61. While the trial judge did not give a specific reason for allowing the exemption, Texas law allows an appellate court to look to the record to see if the decision was permitted by the rule. *Hullaby v. State*, 911 S.W.2d 921, 928 (Tex. App.—Fort Worth 1995, pet. ref'd). An expert who can aid counsel during testimony of another expert that requires his expertise to fully understand the testifying witness is a person in the situation contemplated by Rule 614(c). *Id.* at

929. The record shows that the two expert witnesses were to testify on the exact same area of expertise, and the prosecution requested specifically that its expert be allowed to listen to the parallel expert. ECF No. 16-18 at 60 *et seq.*; No. 16-19 at 94 *et seq.* The trial judge referred to the rules and correctly decided that the prosecution's expert witness was allowed under Rule 614(c), as is common. *Drilex*, 1 S.W.3d at 118–19. Thus any objection Jameson's counsel could have made to the exemption would have been futile. Habeas relief for ineffective assistance of counsel cannot be had based on counsel's failure to make a futile objection. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Rios-Delgado v. United States*, 117 F. Supp. 2d 581, 589 (W.D. Tex. 2000).

In addition, Jameson cites no federal law for this ground for relief. On federal habeas review, a federal court decides only whether constitutional standards were met, even if state law would impose a more demanding standard of proof. *West v. Johnson*, 92 F.3d 1385, 1393 (5th Cir. 1996) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). "A federal court may grant habeas relief based on an erroneous state-court evidentiary ruling only when the error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Patterson v. Davis*, No. 4:16-CV-290-Y, 2017 WL 6383174, at *3 (N.D. Tex. Dec. 14, 2017) (O'Connor, J.) (citing *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998)) (considering a potential violation of Texas Rule of Evidence 614). The Fifth Circuit has held that expert witnesses "clearly fall" within the exemption for a witness essential to presenting a party's claim in Federal Rule of Evidence 615(3), the federal analogue to Texas Rule 614(c). *Polythane Sys., Inc. v. Marina Ventures Intern., Ltd.*, 993 F.2d 1201, 1209 (5th Cir. 1993); *see also T. J. Stevenson & Co., Inc. v. 81,193 Bags of Flour*, 629 F.2d 338, 384 (5th Cir. 1980) (finding that the "District Judge was probably required to permit" an expert witness to be present during trial). Something that is standard, or even

10

required, under Fifth Circuit law cannot be a constitutional violation. Habeas relief is not warranted on this ground.

### B. Jameson's trial counsel was not ineffective for not requesting a charge on the lesser-included offense of manslaughter because the facts did not evidence recklessness.

A criminal defendant is constitutionally entitled to an instruction on a lesser-included offense if the evidence would permit a jury rationally to find the defendant guilty of the lesser offense and acquit him of the greater. *Hinojosa v. Dretke*, No. Civ. SA-01-CA-136-RF, 2004 WL 2434353, at *17 (W.D. Tex. Sept. 30, 2004). "This necessarily requires a showing that the facts of the case and the laws of the State warrant such an instruction." *Id.*

Jameson contends that his trial counsel was constitutionally ineffective for failing to request a charge on the lesser-included offense of manslaughter, instead of murder. ECF No. 15 at 8–9. Jameson argues that because he was intoxicated, he could not have had the requisite mental state for murder of intentionally or knowingly causing death. *Id.* at 9; Tex. Pen. Code § 19.02(b)(1). He also argues that the facts that he outweighed his victim by a hundred pounds and he used "excessive force" to deter a sexual assault by his victim merit a finding of recklessness, the mental state required for manslaughter. ECF No. 15 at 9; Tex. Pen. Code § 19.04(a).

Jameson has not made a showing that he only recklessly killed the victim. First, Texas law does not allow evidence of voluntary intoxication to negate the specific intent to commit murder. Tex. Pen. Code § 8.04(a); *East v. Scott*, 55 F.3d 996, 1006 (5th Cir. 1995). Whether Jameson was intoxicated has no effect on whether the jury would acquit him of murder. Nor does he explain how weighing more than his victim or acting with excessive force in the killing would have led the jury to find that he recklessly, instead of intentionally or knowingly, caused the death of his victim.

11

Second, Jameson's trial counsel plausibly responded to this claim of ineffective assistance in the state habeas proceeding. His counsel stated that he did not seek an instruction on manslaughter because the evidence showed that Jameson had "intentionally nearly decapitated the victim" and thus the act was not reckless. ECF No. 17-8 at 98. In essence, this is an argument that the record supports only murder, not manslaughter, and Jameson has not provided any convincing arguments or facts to the contrary. Jameson's counsel made a reasonable decision based on the absence of evidence of reckless intent, and there is no reasonable probability that the result of the proceeding would have been different, as required under *Strickland*. 466 U.S. at 694. Jameson has therefore not shown deficient performance or prejudice, and habeas relief is not warranted on this ground.

### C. Jameson's trial counsel was not ineffective for not presenting expert testimony on the effects of intoxication on intent because voluntary intoxication cannot negate intent.

Jameson argues that his trial counsel was deficient for not presenting expert testimony on the effects of intoxication on his intent to commit murder. ECF No. 15 at 11–12. He argues that an expert witness could have shown that Jameson was incapable of having the necessary intent to kill. *Id.* In support, he cites two non-binding cases from the Ninth Circuit, *Miller v. Terhune*, 510 F. Supp. 2d 486 (E.D. Cal. 2007) and *Jennings v. Woodford*, 290 F.3d 1006, 1013 (9th Cir. 2002). *Id.*

As this Court has already stated, and as Jameson's counsel responded at the state habeas proceeding, Texas law does not allow evidence of voluntary intoxication to negate the specific intent to commit murder. Tex. Pen. Code § 8.04(a); *East v. Scott*, 55 F.3d 996, 1006 (5th Cir. 1995); ECF No. 17-8 at 98. Jameson's counsel was not deficient for failing to advance an incorrect legal theory, nor would the outcome of his trial have been different had the incorrect theory been

12

raised. Habeas relief is not warranted on this ground.

### D. Jameson's trial counsel was not ineffective for not requesting a continuance to allow a witness to appear at trial because Jameson neither named the witness nor gave the content of his testimony.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014), as revised (Sept. 2, 2014) (citing *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001)). "To prevail on such a claim, 'the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.'" *Id.* (citing *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)).

Jameson asserts in his petition that his trial counsel was ineffective for failing to request a continuance because one of his crucial witnesses would be unable to testify until a later date. ECF No. 3 at 9. He asserts that this witness was needed to corroborate Jameson's childhood sexual abuse. *Id.* However, he does not name the witness or give any detail concerning the witness's potential testimony, in either his Petition or his Memorandum of Law, the latter of which omits this ground completely. *Id.*; ECF No. 15 at 12. In his state habeas petition, Jameson made a similar claim with respect to a witness named John Harber, who was to testify concerning sexual abuse of Jameson as a child. ECF No. 17-8 at 52. However, the fact that he raised this claim in detail in his state proceeding does not excuse him from presenting his claim in detail in this federal proceeding, nor can the Court assume that this is the witness on whose absence Jameson bases this ground for relief. Because Jameson has neither named the witness nor set out the content of the witness's proposed testimony, he cannot obtain habeas relief on this ground.

13

**E.  Jameson's trial counsel was not ineffective for any failure to investigate.**

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* A petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).

Jameson raises four sub-claims of failure to investigate and present resulting evidence. He claims that his counsel failed to investigate (1) Jameson's "extreme intoxication," (2) Jameson's PTSD, (3) evidence of the victim's homosexuality from Dee Ann Eslick ("Eslick") and James Weldon ("Weldon"), and (4) evidence from two witnesses, Romero and Eslick, supporting Jameson's defense related to Whitfield's purported homosexual and assaultive tendencies. ECF No. 15 at 12–13.

On the first of these sub-claims, Jameson again asserts that more evidence concerning his intoxication would have showed the jury that he was unable to possess the intent for murder. As previously stated, Texas law does not allow evidence of voluntary intoxication to negate the specific intent to commit murder. Tex. Pen. Code § 8.04(a); *East v. Scott*, 55 F.3d 996, 1006 (5th Cir. 1995); ECF No. 17-8 at 98. Nor does Jameson present with specificity what further evidence existed or how it would have changed the outcome of his trial. *Gregory*, 601 F.3d at 352.

As to the second sub-claim, the record in fact shows that Jameson's trial counsel did significant investigation of and presented evidence on Jameson's PTSD resulting from sexual

abuse as a child. At trial, counsel presented substantial evidence on PTSD and sexual abuse via testimony from Dunlap (ECF No. 16-18 at 61–101), Jameson himself (ECF No. 16-19 at 13–35), Julie Carbajal (*Id.* at 36–43), and Darlene Murga (*Id.* at 43–51), as well as through criminal records related to Jameson's alleged abuser Johnny Flores (ECF No. 17-3 at 48–54). Jameson has not made a showing that even more evidence would have resulted in a different outcome at his trial.

As to the third and fourth sub-claims, counsel's evidence at trial was less substantial, as he only presented testimony on the subject of Whitfield's homosexuality from Hernandez, a bisexual man who had Whitfield's number in his phone but testified at trial that he did not know Whitfield. ECF No. 16-18 at 40–45. However, exhibits that Jameson attached to his state habeas petition show that his counsel's investigator did in fact spend several days investigating rumors of the victim's homosexuality, including visiting with Eslick. ECF No. 17-8 at 83–86. Jameson claims that Romero and Eslick would have provided persuasive supporting evidence of self-defense, but he does not say what that evidence would be nor does he appear to know anything about these witnesses beyond what his counsel's own investigator uncovered. ECF No. 15 at 12. Jameson cannot base his claim for failure to investigate on his counsel's own investigation.

In addition, the prosecution presented at trial the testimony of two men, Teddy Joe Stewart and Kenneth Land, who both testified that they had known Whitfield for a substantial amount of time and had never known him to display any homosexual tendencies. ECF No. 16-17 at 109, 112, 117, 119, 121–22. Seth Cowan also testified for the state that he observed Jameson's actions in prison, which led Cowan to believe Jameson might possibly be homosexual. *Id.* at 76. The state thus presented evidence suggesting that Jameson, not Whitfield, was homosexual, counteracting Jameson's defense that he killed Whitfield to escape a sexual assault. Jameson has not shown that his speculative evidence disproves any of the substantial contrary evidence that the state presented

at trial, and therefore cannot show a substantial likelihood that the outcome of the proceeding would have been different had his counsel offered such evidence. *Strickland*, 466 U.S. at 694.

Jameson also presented to the state habeas court an affidavit from James Weldon, a fellow prisoner who stated that he had a homosexual relationship with the victim, Whitfield, and that Whitfield would try to pick up drunk men at bars in order to have sex with them. ECF No. 17-8 at 87–88. Weldon states that Whitfield had sex with Weldon while Weldon was passed out drunk. *Id.* Jameson does not argue that his counsel was deficient for not investigating Weldon, and certainly his trial counsel did not provide unreasonably deficient performance for not investigating a person not apparently known to Jameson or any of the people revealed by his counsel's investigation at the time of trial. Jameson instead argues that Weldon's affidavit shows that there is "a probability" that his trial counsel's investigator would have uncovered similar information about Whitfield with more investigation into the Amarillo gay community. ECF No. 15 at 14. There are layers of speculation to this argument: how much further investigation would have needed to be done, to reveal unknown and unspecified witnesses, who could have provided unknown testimony, which would to an unknown degree increase the possibility that the jury would have accepted that Jameson excusably killed Whitfield in order to defend himself from an alleged sexual assault. Such speculation does not prove counsel's deficient performance under an objective standard of reasonableness.

Jameson has not successfully shown that his counsel was ineffective for a failure to investigate, on any of his sub-claims.

### F. Jameson's counsel was not ineffective for signing a discovery agreement that Jameson himself signed.

Jameson argues that his trial counsel was ineffective for consenting to a discovery agreement that included a waiver of the right to file a motion requesting a list of expert witnesses.

ECF No. 15 at 16. Jameson argues that the prosecution was thereby allowed to surprise his counsel with a rebuttal expert witness whom Jameson's counsel was unable to effectively cross-examine. *Id.* Jameson does not, however, cite any authority for the proposition that signing such a standard waiver amounts to constitutionally deficient performance on the part of trial counsel. *See id.* In addition, the discovery agreement only contains a waiver of the right to file a motion for an expert witness list if Jameson had not first made a written request to the prosecution for an expert witness list. ECF No. 17-8 at 89. Thus the agreement did not, as Jameson argues, absolutely waive his right to an expert witness list. Even more importantly, Jameson himself signed the waiver. *Id.* The Fifth Circuit has refused to find ineffective assistance of counsel in a case where counsel did not even inform his client of a discovery agreement. *White v. Johnson*, 111 F.3d 892 (5th Cir. 1997). This case presents even less a possibility of prejudice. Jameson cannot complain that his trial counsel was deficient for agreeing to waive certain rights when Jameson also waived those rights. This ground does not warrant habeas relief.

### G. Jameson's counsel was not ineffective for not requesting a jury instruction on sudden passion during the guilt/innocence phase because sudden passion is not relevant to guilt/innocence.

Under current Texas law, a defendant convicted of murder can raise the issue of sudden passion at the punishment stage of trial in order to reduce his offense to a felony of the second degree. Tex. Pen. Code § 19.02(d) (1994); *Trevino v. State*, 60 S.W.3d 188, 197 (Tex. App.—Fort Worth 2001), *aff'd*, 100 S.W.3d 232 (Tex. Crim. App. 2003). "Before September 1994, the issue of sudden passion related to the issue of guilt rather than punishment." *Rainey v. State*, 949 S.W.2d 537, 541 (Tex. App.—Austin 1997, pet. ref'd). The statute has not changed since the revised statute went into effect in September 1994. Thus, under the law in effect at the time of Jameson's conviction, voluntary manslaughter was not a separate crime, and sudden passion was a mitigating

factor relevant only to punishment. Tex. Pen. Code § 19.02(d) (1994); *Rainey v. State*, 949 S.W.2d at 541.

Jameson argues that his trial counsel erred by not requesting that sudden passion be included in the jury charge during the guilt/innocence phase. ECF No. 15 at 17. However, as Texas Penal Code § 19.02(d), *Rainey*, and *Trevino*—cited by Jameson in his Response—all show, sudden passion is no longer relevant to the issue of guilt in Texas. 949 S.W.2d at 541; 60 S.W.3d at 197. Sudden passion was, as Jameson's trial counsel correctly noted in the response to Jameson's state habeas petition, properly included in the jury charge for punishment. ECF No. 16-9 at 77–78; No. 17-8 at 98. Jameson's counsel committed no error, and habeas relief cannot be had on this ground.

### H. Jameson cannot obtain reversal based on cumulative error because he has identified no errors.

The "cumulative error doctrine" provides that "an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial." *United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (quoting *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998)). "[F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process." *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)).

Jameson has failed to establish error in any of his individual ineffective assistance of counsel claims. Relief is not available under the cumulative error doctrine where a petitioner has not demonstrated any error. *Williams*, 264 F.3d at 572; *Miller v. Johnson*, 200 F.3d 274, 286 (5th

Cir. 2000). Therefore habeas relief is not available to Jameson on this ground.

**II.    Jameson's appellate counsel did not provide ineffective assistance for not raising legal insufficiency to prove intent, because voluntary intoxication does not negate intent.**

"The appellate-level right to counsel is guaranteed by the due process clause of the fourteenth amendment to an accused pursuing a direct appeal as of right." *McCrae v. Blackburn*, 793 F.2d 684, 688 (5th Cir. 1986) (citing *Evitts v. Lucey*, 469 U.S. 387 (1985); *Griffin v. Illinois*, 351 U.S. 12 (1956)). In a claim of ineffective assistance of counsel on appeal, a petitioner must demonstrate both that "counsel's errors were so serious that counsel was not functioning as the counsel guaranteed to the defendant by the sixth amendment" and "that the particular lapse was prejudicial, meaning that there is a reasonable probability that but for the error the ultimate result would have been different." *Id.* A reasonable probability is one sufficient to undermine confidence in the outcome of the appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991) (citing *Strickland*, 466 U.S. at 694). "Counsel is not deficient for not raising every non-frivolous issue on appeal." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). "'This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention.'" *Id.* (quoting *United States v. Williamson*, 183 F.3d 458, 462–63 (5th Cir. 1999)). To determine whether appellate counsel was deficient, the Court thus must consider whether the omitted challenge would have been sufficiently meritorious such that counsel should have raised it on appeal. *Id.*

Jameson argues that his appellate counsel provided ineffective assistance by not raising "legal insufficiency of the evidence to prove intent to kill." ECF No. 15 at 10. As in previous

19

grounds, Jameson argues that his intoxication meant that he was unable to form the requisite intent to commit murder. *Id.* at 11. Texas law does not allow evidence of voluntary intoxication to negate the specific intent to commit murder. Tex. Pen. Code § 8.04(a); *East v. Scott*, 55 F.3d 996, 1006 (5th Cir. 1995); ECF No. 17-8 at 98. Jameson's appellate counsel did not provide ineffective assistance by not raising an incorrect legal theory, nor would the ultimate outcome of his appeal have been different had the incorrect theory been raised. Habeas relief is not warranted on this ground.

### III.   Jameson has not shown that there was no evidence of intent, because voluntary intoxication does not negate intent.

Jameson's "no evidence claim" is again a claim that the prosecution did not prove the requisite element of intent in his murder charge because Jameson was intoxicated. ECF No. 3 at 9; No. 15 at 19. In his response he states only that the contents of his claim are submitted in his third ground for review, which is a claim for ineffective assistance of counsel for not presenting expert testimony on the effects of intoxication on intent. ECF No. 15 at 19; *see supra* Part I.C. Texas law does not allow evidence of voluntary intoxication to negate the specific intent to commit murder. Tex. Pen. Code § 8.04(a); *East v. Scott*, 55 F.3d 996, 1006 (5th Cir. 1995); ECF No. 17-8 at 98. Jameson has therefore not shown any problem with evidence of intent, and habeas relief is not warranted on this ground.

In his Reply, Jameson appears to briefly raise a new ground, stating that there was insufficient evidence because Jameson cut Whitfield in an attempt to prevent a sexual assault. ECF No. 26 at 19. Jameson does not further argue, prove, or explain why this statement demonstrates lack of evidence of intent. *See id.* In any case, courts generally do not consider arguments raised for the first time in a reply, because the opposing party is unable to make a response at that point. *E.g. Mid-Continent Cas. Co. v. Eland Energy, Inc.*, No. 3:06CV1576-D, 2008 WL 80760, at *3

(N.D. Tex. Jan. 8, 2008) (Fitzwater, J.) ("[T]his court has repeatedly held that it will not consider arguments raised for the first time in reply."); *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 771 (N.D. Tex. 2012) (Lindsay, J.) (declining to consider new arguments and evidence in a reply to avoid prejudice to the responder); *cf. Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees*, 709 Fed. App'x 243, 249 n.27 (5th Cir. 2017) (quoting *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005)) ("Arguments raised for the first time in a reply brief, even by pro se litigants . . . , are waived."). If Jameson intended this to be a separate argument, it is newly raised, and the Court should not consider it.

## IV.    Jameson has not demonstrated that new evidence exists of provocation and self-defense.

A prisoner can assert actual innocence based on newly discovered evidence that makes it more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *House v. Bell*, 547 U.S. 518, 536 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In order to be credible, a gateway claim requires some "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.

Jameson's Petition argues, as his eleventh ground for review, that "Petitioner's rights to due process of law has been violated as demonstrated by newly discovered evidence." ECF No. 10 at 10. He asserts that he has "accumulated new evidence that will establish that the provocation from the deceased was plained [sic] by deceased prior incident and would support defense strategy of deceased taking advantage of petitioner and will prove self-defense." *Id.* In Jameson's Memorandum of Law, he does not offer any information or explanation concerning the allegedly new evidence, but only states that the factual contents of this ground are contained in his fourth

ground, which was an ineffective assistance claims based on lack of expert testimony on the effects of intoxication with respect to Jameson's ability to form the requisite intent for murder. ECF No. 15 at 11–12; *see also supra* Part I.C. Jameson also asserts that he cannot address this claim because he does not have the prosecution's factual findings. *Id.* In Jameson's Reply, he contradictorily states that the factual support for this ground is found in his sixth ground, which was that his trial counsel was ineffective for failure to investigate. ECF No. 26 at 19–20; *see also supra* Part I.E.

Jameson has presented no evidence of any kind to the Court on this ground, nor has he made clear what relief he seeks—actual innocence or otherwise—or how the supposedly new evidence connects to that relief. If the new evidence is what an expert on intoxication would have provided, under his fourth ground, then Jameson has neither provided a statement from such an expert nor has he overcome the legal error that intoxication is not a defense to murderous intent in Texas. *See supra* Parts I.B, I.B, I.C, I.E, II, and III. If the new evidence is contained in the state's factual findings, then it is neither new evidence nor has Jameson presented it to the Court. If the new evidence would have been revealed by his counsel's further investigation, then this is mere speculation and has not been presented to the Court. *See supra* Part I.E. Jameson cannot gain habeas relief on newly discovered evidence unless he first presents some new evidence to the Court.

## CONCLUSION

Because Jameson has not shown that he is entitled to habeas relief, the undersigned **RECOMMENDS** that Judge Fitzwater **DENY** the Petition for Writ of Habeas Corpus (ECF No. 3).

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions,

and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

        Signed June 7, 2018.

                                                              Hal R. Ray, Jr.
                                                              UNITED STATES MAGISTRATE JUDGE